Our next two cases on the calendar have been submitted on the briefs. We're going to move to appeal 23-2605, United States v. David Odom. Mr. Luthen, we'll begin with you. Good morning, Your Honors, and may it please the Court, Elliot Luthen on behalf of David Odom. This appeal raises two issues regarding supervised release. First, whether four of the new conditions imposed below have the requisite precision and particularity that this Court requires. And second, whether a fully secured card suffices as opening a new line of credit, a finding that the District Court made for one of the violations below. Now, starting with the first issue of the conditions that were imposed below, I'd like to begin with an observation regarding harmlessness, because harmlessness theoretically applies to all four conditions. Besides complying with this Court's directions to raise these issues and contest the conditions below, there's a practical reality that I think is worth underscoring. And that is when the government suggests that these conditions can be later modified, the typical defendant, when they transition from prison to supervised release, doesn't have a lawyer representing them. And this has been the case in our practice in the Federal Defender's Office. We are usually appointed only once a supervisee has had a petition to revoke filed against them, in which case where then the defense counsel is being reactive. And so the idea, what I'd like to underscore is that the idea that modification is a cure-all is really a siren call, because a defendant is unrepresented, and the idea that they're going to transition from prison to supervised release and know to challenge arguably vague conditions at the outset just isn't how the average supervisee is going to begin their term of supervision. That's why we think that harmlessness does not apply. Let me focus in on standard review for a little while. We've got the fiduciary condition, the business ownership condition, what I call the alcohol condition, and then the community service condition. Some of the arguments here are vagueness. And we have to confess our court's law has not been as clear as it could be with regard to standard review. I'd like your thoughts on the first two, the vagueness and the fiduciary and the business ownership. Are you arguing those are vagueness de novo review? Yes, Judge Brennan. And then on the third and fourth, the alcohol and the community service, are those a failure to justify and therefore an abuse of discretion review? The failure of the alcohol and the community service. The alcohol one was failure to justify and so would be abuse of discretion because there was a proper justification, reasonableness. As to the community service condition, my position is that it's procedurally infirmed. There was no explanation given at all. And so that would be reviewed de novo because it's a procedural challenge. And I'm aware the government's got positions with regard to waiver, et cetera, with regard to those. And we'll hear from them. But I just wanted to get your thoughts on that.  Yeah, absolutely. And the order that you just outlined the conditions really reflects the concern, the priority of concern that Mr. Odom has with these conditions. Now, we're not conceding any of these four, but the vague conditions are definitely at the forefront. And there's no doubt that he understands and as his lawyer, I can explain to him what the heartland of those conditions entails. No question about it. But it's the limits of those conditions that are concerning because it's those limits that often are the subject of petitions to revoke. And it's the limit of fiduciary responsibility and the limit of business ownership interest and or affiliation that is quite concerning. And the government in its response brief doesn't even attempt to delineate those limits. So that's why we think that those conditions need greater clarification so that they provide the notice that this court requires. Shouldn't we, though, also consider the fact that Mr. Odom is or was a lawyer? And so to him, at least, I don't think there's much of an argument that he didn't have enough notice, that he himself didn't have enough notice as to understand the extent of fiduciary responsibilities. Because, you know, as particularly in the lawyer in the area that he practiced, one would hope that he's familiar with what fiduciary responsibility means. Well, two responses, Judge Lee. First, this court's case law on what the operative doctrinal inquiry is doesn't account for professions. One's profession is just whether a person of reasonable notice. So I don't think we consider his status as a lawyer. But even if we do, two follow-ups to that. One, as it lay out in the brief, I think what the meaning of fiduciary responsibility is is highly subjective. And second, it is not a trained lawyer who is enforcing this condition. It's a probation officer. And that's a point that this court in its Thompson and Capps and Siegel made, that the fact that there's open-ended delegation is problematic because a probation officer is not necessarily trained in the law. He's the one enforcing it. So how would you propose that this be worded? Does it have to give an exhaustive list of all the different types of jobs? I mean, at some point, a generalized description is always going to be subject to your argument that it's somehow vague on the fringes. For sure. I mean, there's grayness in words always. But one, if a condition of supervised release is going to necessarily be so vague that it's an open-ended delegation, then don't impose the condition. To this point, there's a separate condition, but that special condition four that I think gets at a lot of what this condition is, what the fiduciary responsibility condition is trying to get at. You shall not maintain employment where you have access to other individuals' personal information, including but not limited to social security numbers and credit card numbers. And that's quite specific and objective. And so to the extent that the sentencing court is concerned with him having power over someone's financial information, I think that condition more objectively gets at that goal. But look, if circumstances arise where an individual cannot be sure whether his behavior involves fiduciary responsibility or a business association, why can't he simply seek guidance from the probation officer or the district court? Well, he certainly can. That recourse is always available. But in the meantime, we have a probation holding that condition over the defendant or the supervisee's head, potentially abusing the probation officer's discretion in taking too broad of a meaning. And then if they file a petition to revoke, as this court laid out in St. Clair, it's too late to challenge the vague condition. And so we're just asking for greater clarification now. I think that would be so difficult, you know, to do. And here we have an individual who seemed to be undeterred by many restrictions on his conduct, both from the bar licensing authorities and from probation services. Don't you think that some breadth of terms were necessary to keep him from finding ways around the restrictions? Well, two responses to that, Judge Roedner. One, we're not contesting that a condition pertaining to his employment, limiting his employment in some way, could be appropriate. Second, I'm hesitant to say that the poor character or the questionable judgment of my client somehow diminishes or hollows the due process and notice right that he has to terms of supervised release that are not vague. Similarly, we'll have different probation officers interpreting those conditions. And so I don't quibble with your Honor's point that there were points where he was undeterred. But I don't think that should factor into whether the condition itself is vague. I would like to just ask you this. Let's say that we decided that he did not violate a condition of the supervised release by getting two secured debit cards. What would this do for him in a practical sense? In a practical sense, it would allow him to obtain those sort of cards now that he is already on supervised release because that condition was already imposed. And that is the thrust of why it really matters. It's also a condition that is routinely imposed for defendants who are convicted of or have fraud convictions. And so it's bigger than there's a systemic interest as well. But the practical reality for him is that he has that condition once again, and probation theoretically will limit his ability to obtain a secured card. Judge Bryan, can I ask a question? Absolutely. So there's some confusion in the briefs, or maybe I'm just confused and the briefs are clear, between a debit card and a secured card, right? And it seems like there may be two different types of secured cards. One is where you basically prepay, in other words, like a mobile phone prepay card, right? And the other one is where you're basically putting down a security deposit. Right. And that is you're putting down money, and you could maybe spend beyond that, right? But the bank still has that security deposit. And I guess – and so which type of cards are we talking about here? Your confusion, I think, is emblematic of the government's failure to prove this condition below because we don't know. And my understanding is that it is more so of the secured credit card where there is a deposit down, and that means that the bank takes on no risk of loss. But it wasn't ever unpacked below the specifics of this. And that's why I think the government abandoned this theory in its closing argument, never mentioned the credit report or elicited testimony about the credit report. That's why you don't see Exhibit 15 come up ever in the transcript. And your understanding of the second type of card, that is where you put down a deposit, can someone using that card exceed that deposit? I don't think so. And if that's the case, then I would agree that, yeah, the lender is taking on risk there such that it is a kind of card that the condition contemplates. But when it can't go over and you can't exceed that limit, my understanding is that these cards weren't that case, nor is there any evidence in the record to support that it could be exceeded. And did those arguments come up? Did defense make those arguments below? No, because the government never discussed this. I mean, the government still had the burden by a preponderance of the evidence to establish the violation. The thrust of their argument – of their allegation below was on the auto loan. That clearly sufficed. But he arguably had permission, which is why the district court found that that wasn't a violation. And so that was – which is the fact that the government abandons that theory is why Mr. Odom's defense lawyer in his closing really just briefly skirted past those cards because it seemed like it had been conceded. The focus was the auto loan. Okay, thank you. When you reference Exhibit 15, are you talking about the Equifax report? I am, Your Honor. And is – that's not in the record, is that correct? I believe it is – I believe the exhibits would be in the record. I don't know the exact record number off the top of my head. Thank you. We'll give you some rebuttal time. Thank you. Thank you. Ms. Bonamici, we'll go now to you on behalf of the government. May it please the court, counsel, Deborah Bonamici on behalf of the United States. The district court did not err in imposing the challenge conditions because those conditions were neither vague nor unsupported. Ms. Bonamici, I am struggling to understand how a credit card that a person fully secures with cash can be considered a line of credit. In other words, what credit has the bank extended? It seems to me almost no different than a traveler's checks. Or is your argument simply that no one really knows what these credit cards actually were? No, Your Honor, that's not the government's argument. I think the best way to explain it is to distinguish the three types of cards that Judge Lee referenced. That is a prepaid card, a debit card, and a secured credit card. With respect to a debit card or a prepaid card, the cardholder deposits money that is used to pay the charges. The cardholder presents the card, but then the lender, the bank, pays with the defendant's money, essentially. And that money is drawn down as the charges are paid. In the context of a secured credit card, it's different. There's a deposit made by the defendant, and in a fully secured credit card like the ones that are at issue here, the amount of the deposit is the full extent of the credit. But what the defendant is permitted to do, and it's structured this way, the defendant can make regular payments on the card, and so that deposit is not touched, it's not used, and the full amount of the deposit remains credited to the account. One of the primary purposes of secured credit cards is to allow cardholders who need to rehabilitate their credit to prove that they are creditworthy, that they can be trusted to make the regular payments. Secured versus unsecured. Correct. Correct. So in the secured credit card setting, it serves essentially as collateral, whereas in the other two settings, it serves as the pot from which the payments are made. But in either case, as Judge Rovner says, the bank doesn't really take a risk, right, of nonpayment, because the bank always has, even in the secured credit card context, the bank always has the initial deposit to fall back to. But the definition of credit isn't based solely on the amount of risk assumed by the lender. The definition of credit is what is being done, what is actually being provided or extended to the borrower. And in this case, what's being provided is an opportunity to borrow the money when the purchase is made, right, and then to pay back that money borrowed on a regular basis. And as long as that's done, the deposit or collateral remains fully credited on the account. And that's how you know that the money actually is borrowed and that credit is extended, because that deposit is fully credited on the account as it goes along. But then what would be the justification for prohibiting such credit cards, right? And so if we're worried that this person is going to commit fraud, then why prohibit them from getting a secured credit card? Because there's no opportunity in that context for him to commit fraud. There's no opportunity for him to defraud the bank, perhaps, or the provider of the card, the lender. But that's not the only reason why lines of credit are monitored by probation and why that condition is imposed in fraud cases. And I'm trying to understand what probation's justification would be for prohibiting anyone from getting a secured credit card. The concept here is that all of the financial transactions that a person who's committed fraud, and not to mention a serial fraudster like the district court panel, this defendant-to-be with a remarkable history of variety and quantity and continuous fraud. Right, none of that's disputed. That whenever he is taking or expending money, expending money, borrowing money, engaging in financial transactions, that may have an impact on his restitution, his ability to pay restitution. It may have an impact on what he is getting ready to do next in terms of creating, maybe building up his credit so that he can, you know, eventually move into the next dimension. It's just a question of financial security or financial monitoring as much as anything else in that context. And that matters a lot, and it's not a non-issue. The issue here, and by the way, this is a case where a defendant, not surprisingly, did not inquire as to his ability to do it, did not do any of that, did not inform the probation officer after having done it, and is clearly a situation where the probation officer was unable to monitor his conduct. So, I mean, he had every opportunity to ask whether he could. He had every opportunity to fight the probation officer by raising it with the court afterwards. And this court takes that into consideration. So drawing from this to the more general points, it is, I don't know that there's any evidence to suggest that these issues arise mostly after rules to show cause have been filed. So, okay, so it's the government's burden, of course, to show by a preponderance of the evidence that he took out a line of credit, right? Correct. And the document that we provided. And you're saying that is what he did? That is what he did, and the document that we provided, it's true. As the defendant acknowledged in his opening brief, the government didn't put a lot of time on this issue because there were so many other issues, many of which were much more important. That's true. But we did present documentary evidence that established both that the transaction, or not the transaction, but the account itself was described as a line of credit and as a revolving line of credit, that it was tracked and monitored the way credit cards and extensions of credit are tracked and monitored for credit score purposes, unlike debit cards and prepaid cards, which generally aren't tracked at all. So, this document did establish those facts, and the only evidence that the defendant presented was his own self-serving testimony on the point, which the district court discredited, entirely actually finding that the defendant had perjured himself. So, bottom line, what kind of credit card can he have? He can have a credit card that the probation officer approves. Or a debit or a prepaid. Right. He can have anything that the probation officer approves, and if he is up to date or he has paid his financial obligations, which would be difficult for the defendant in this case with such a large restitution amount, understood. But generally speaking, the condition does not apply after the defendant has fulfilled his financial obligations under the sentence. And the reference to the document is to Exhibit 15, is that right? Yes, Judge. And it's true, we did not put on a witness to further elaborate it. Yeah, it's very confusing. And the conditions, the initial conditions, don't require him to provide just his financial information on a routine basis. Is that correct? They require it at the request of the probation officer, and the probation officer routinely requests it. Does that include like bank statements and all that other stuff? Yes, those forms that he filled out, falsely, I might add. And, Judge Lee, you've made an important point, I think, about considering the defendant's background, too. You know, supervised release conditions are imposed in the specific context of a particular case. You know, the standard of reviewing this is objective, but that doesn't mean that the court ignores the fact that the defendant in the particular case can understand the conditions as written. That would be ridiculous. As well as the defendant's opportunity to challenge those conditions or to seek clarification from the district court, this court has recognized that those are relevant topics in assessing a vagueness challenge. And the defendant also, I mean, his suggestion, basically, is that these conditions need to be written so as to delineate every possible set of facts that might apply and to determine which side of the condition each potential set of circumstances would fall. And, you know, that's not the law, and it's not in any way practical, and it's not warranted, especially in a case like this one, where the evidence demonstrates that the defendant has suffered and is not likely to suffer any prejudice at all from any aspect of these conditions. So for all of those reasons, the vagueness challenges should be rejected. With the court's permission, I would like to just address the other three challenges. With respect to the alleged failure of the court to support either the community service or the alcohol, with respect to both of those conditions, the district court, as to the 100 hours, there's no argument about a failure to support the substantive nature of that condition. And the 100 hours, the defendant did not raise the question about justification. He merely argued another number. The district court clearly compromised between the two numbers. And remembering that the maximum was also limited by the number of hours that could be served per week. It was limited to eight hours per week. So although there was a maximum and a debate over the maximum, there was no challenge to the eight hours per week, which fundamentally limited that condition. With respect to the alcohol, the district court could have declined to apply the alcohol condition in these circumstances. Fairly read, we believe that the district court agreed with the prosecutor's statement, which was based on common knowledge, really, that alcohol is not a good fit for somebody who's suffering from clinical severe depression and that it's problematic in that setting. If the court were to find that the court's justification was inadequate there, or in the case of a community service, the proper result would not be reversal or remand for resentencing. The proper result would be for the court to vacate those conditions and would leave for the government if they thought it was important to seek a modification, as both parties are entitled to do under Rule 3582E. Thank you, Ms. Bonamici. Thank you, Your Honor. Mr. Laughton, we'll go back to you for three minutes for rebuttal. Thank you, Judge Browning. I'll try to be quick. As to the credit issue, Judge Lee, to your point of this really being about financial monitoring, or that seems to be what the government is suggesting, I think Special Condition No. 6 gets at that, where the defendant has to provide financial documentation whenever requested. And as the first five minutes of the oral argument for the government all centered around the details and particulars of this condition and whether it was proven, where was that below? That is part of our argument. Second point, there's been a lot of conversation around harmlessness and the ability to modify a condition. On page 17 of the blue brief, I flag multiple cases, Siegel, Bickert, Thompson, cases where this court found conditions were vague. Those cases would have no meaning if harmlessness applies simply because a defendant can subsequently seek clarification. And so to the extent that this court is inclined to disagree with our position that fiduciary responsibility is not vague, business interest and affiliation is not vague, I would urge the court not to conclude that it's harmless, because that would apply to every vagueness challenge. Instead, if the court believes that those words are sufficiently defined, then so be it. But harmlessness sets a slippery slope in terms of precedent, and even still the government has not set forth any sort of dividing line or offered any limiting principle as to what fiduciary responsibility and the business interest and affiliation conditions mean. And so Odom and future defendants who have these conditions will be at a loss and subject to a probation officer's interpretation. Currently, Mr. Odom, he finished the 16 months of re-imprisonment. He began the 12 months of supervised release again in June. Is that right? Yes, I believe that early July. Between June and July. Does he have a release date? He's out. Oh, he's out. Yeah, which leads me to one of my final points. I should say release from supervised release. No, he's on supervised release currently. And does he have a date when that's to end? 12 months after his official release date. It will be next summer. Okay, thank you. And so that actually leads me to a second to last point. I know this is the beginning of the term, and it's very busy with new cases, but to the extent that a decision could be reached, the expediency of it very much matters to him because he's already a few months into his supervised release term. Final point regarding the alcohol condition. The district court's reasonableness. Oh, I see I'm out of time. You can finish your last one. Thank you, Judge Brennan. Reasonableness can be said of every condition. And this alcohol condition, while surely not burdensome for someone like Mr. Odom, is routinely applied. And the government's suggestion that simply because someone has mental health issues that this condition should apply is troubling and should give the court pause because this condition comes up in almost every single criminal sentencing. And so many of our clients have mental health issues, and the notion that their liberty can be restricted simply because they have mental health issues I don't think is sufficiently particularized, nor is it the justification that the district court below adopted. Thank you, Mr. Laughlin. Thank you, Ms. Bonamici. The case will be taken under advisement. That will complete our hearings for today.